IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 120-053 |
| | ) | |
| KHALLID MARQWESE WRIGHT | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Defendant seeks suppression of a firearm and cocaine found on his person during a warrantless arrest on February 4, 2020. After careful consideration of the briefs and evidence presented at the hearing on March 31, 2021, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to suppress be **DENIED**. (Doc. no. 25.)

**I.    FACTS**

On August 5, 2020, a grand jury in the Southern District of Georgia charged Defendant with one count of felon in possession of a firearm under 18 U.S.C. § 922(g)(1) and one count of cocaine possession under 21 U.S.C. § 844(a). (Doc. no. 1.) These charges concern a firearm and cocaine found during a search of Defendant's person incident to his arrest on February 4, 2020, by Richmond County Investigator Ashley Syria. Investigator Syria arrested Defendant because of an active investigation into allegations of Defendant robbing Antonio Wideman and Denzil Shaw at gunpoint on January 25, 2020. (Suppression Hr'g Tr., doc. no. 47, pp. 29-33.)

Investigator Syria's investigation of the alleged armed robbery did not begin on the date of the armed robbery because the victims, Messrs. Wideman and Shaw, did not report

the armed robbery to police.  Instead, the investigation began the next day when Mr. Wideman allegedly took matters in his own hands and committed a drive-by shooting at the home of Rebecca Lorenz, Defendant's mother, on January 26, 2020.  (Id. at 11.)

Investigator Syria interviewed Ms. Lorenz on the evening of the drive-by shooting.  Ms. Lorenz said she was sitting on her front porch when a dark-colored vehicle stopped, Mr. Wideman rolled down a rear window, he began yelling at her, and shots were fired at her home.  (Id. at 13-14.)  Ms. Lorenz's boyfriend pulled her to the porch floor.  (Id. at 14.)  Earlier that day, Ms. Lorenz allegedly received advance warning of the drive-by shooting from Pamela Wideman, the mother of Mr. Wideman.  (Id.)  Ms. Lorenz remarked that Defendant and Mr. Wideman had been friends for many years, and while she did not know the reason for the drive-by shooting, both Defendant and Mr. Wideman had been charged in the past with drug offenses.  (Id. at 15-17.)  Ms. Lorenz's neighbor, Shann Bates-Butler, informed Investigator Syria that she witnessed the drive-by shooting by occupants of a dark-colored car, and Ms. Lorenz called her earlier that day to relay the warning from Ms. Wideman.  (Id. at 17-19.)

Investigator Syria traveled to the home of Ms. Wideman in North Augusta and, upon arrival, observed Mr. Wideman standing by a dark-colored car and fleeing on foot when he saw her police car.  (Id. at 19-20.)  Ms. Wideman spoke with Investigator Syria, confirming she called Ms. Lorenz but denying she warned Ms. Lorenz of the drive-by shooting.  (Id. at 20.)  Instead, she called Ms. Lorenz to accuse Defendant of robbing Mr. Wideman at gunpoint.  (Id.)  Ms. Wideman told Investigator Syria that, according to her son, Defendant put a gun to his head and robbed Mr. Wideman and his cousin Mr. Shaw, taking $2,000 from one and $500 from the other, and making Mr. Shaw strip naked.  (Id. at 21, 57.)  Zana Marion, Mr. Wideman's

2

girlfriend, confirmed to Investigator Syria, during a phone call on January 27, 2020, that Ms. Wideman told her Defendant robbed Messrs. Wideman and Shaw, taking $2,000, $500, and Percocet pills. (Id. at 22, 57.)

On January 29, 2020, Sergeant Julio Concepcion informed Investigator Syria of a conversation he had with Kitana Long, who confessed to being the driver of the car during the drive-by shooting and said Tori Caldwell, her boyfriend, was in the front passenger seat. (Id. at 23-24.) Mr. Caldwell told Ms. Long that Defendant robbed Messrs. Wideman and Shaw at gunpoint, taking $2,000, $500, two firearms, and one pint of liquid hydrocodone. (Id. at 24.)

Investigator Syria spoke with Jacqueline Dunn, Mr. Shaw's mother, on January 30, 2020. (Id. at 26.) Ms. Dunn explained that Mr. Shaw called her after the armed robbery and was hysterical, explaining he was robbed and forced to strip naked, and he believed the robbery was a setup because Mr. Wideman knew the robber. (Id. at 26-27.) Ms. Dunn called Mr. Shaw in the presence of Investigator Syria. (Id. at 27.) He acknowledged being a victim of an armed robbery and said he would speak with investigators upon his return from out of town. (Id.) Neither Ms. Dunn nor Mr. Shaw mentioned Defendant by name.

When Investigator Syria saw Defendant on February 4, 2020, she intended from the outset to conduct a warrantless arrest of him as a suspect in the armed robbery. (Id. at 29-33.) She believed she had probable cause but wanted to bring him in for questioning because she did not know where the crime occurred and could not obtain an arrest warrant in Richmond County until she could confirm the location. (Id. at 32.) Investigator Syria followed Defendant to a convenience store and arrested him with the assistance of Richmond County Deputy Marlon Campbell. (Id. at 28, 30-31.) Investigator Syria informed Defendant he was being arrested so

3

that he could be transported for questioning, and Deputy Campbell found the gun and cocaine on Defendant's person during a search incident to the arrest. (Id. at 31-32.) Defendant provided no information during the interview concerning the armed robbery, and Investigator Syria obtained arrest warrants that night for the gun and drug charges only and not armed robbery. (Id. at 33; doc. no. 25-3.)

After Defendant's arrest, Mr. Shaw returned to Augusta and confirmed the robbery details, as well as the location in Augusta. (Id. at 34-35.) Investigator Syria then obtained warrants for armed robbery for Defendant and Dezmin Freeman, who allegedly committed the robbery with Defendant. (Id. at 36.)

## II.     DISCUSSION

Defendant seeks suppression of the gun and cocaine found during the February 4, 2020 search contending (1) Investigator Syria arrested him for the sole and impermissible purpose of transporting him to jail for an interview; and (2) probable cause did not exist at time of the arrest because most of the supporting information was hearsay, and there was no information concerning where the robbery allegedly occurred. The government argues probable cause did exist, and it is improper to consider Investigator Syria's intentions rather than the objective facts. The Court agrees with the government.

The Fourth Amendment generally requires the police to secure a warrant before making an arrest. United States v. Hall, 500 F. App'x 819, 821 (11th Cir. 2012) (*per curiam*). However, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). Probable cause exists

when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotations omitted). To determine whether an officer had probable cause to arrest, the Court must examine the events leading up to the arrest, and then decide whether those historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. Maryland v. Pringle, 540 U.S. 366, 371 (2003) (internal quotations omitted). Although the movant generally bears the burden of showing evidence should be suppressed, in the context of a warrantless search or seizure, the government must show the encounter was consensual or that the search or seizure was justified. United States v. Smith, No. 1:13-CR-0190-SCJ, 2014 WL 2085435, at *8 (N.D. Ga. May 14, 2014) (quoting United States v. Freire, 710 F.2d 1515, 1519 (11th Cir. 1983)).

At the time of Defendant's arrest, as detailed in § I, *supra*, Investigator Syria had the following information: (1) a drive-by shooting occurred at the home of Ms. Lorenz, Defendant's mother, on January 26, 2020; (2) Ms. Lorenz accused Mr. Wideman of the drive-by shooting and, while she did not know the motive for the attack, mentioned Defendant's relationship with Mr. Wideman and their prior drug convictions; (3) Ms. Wideman, who purportedly gave Ms. Lorenz advance warning, attributed the attack to an armed robbery of her son and Mr. Shaw by Defendant on January 25, 2020, and recounted the details of that robbery to Investigator Syria, as described to Ms. Wideman by her son; (4) Ms. Marion, the girlfriend of Mr. Wideman, confirmed that Ms. Wideman provided her with

the same information concerning the robbery; (5) Ms. Long, who drove the car during the drive-by shooting, confirmed to Sgt. Concepcion her understanding that Defendant committed the armed robbery, as stated by her boyfriend Mr. Caldwell, who was in the passenger seat during the attack; (6) Mr. Shaw's mother recounted the phone call she received from her hysterical son, who said that someone who knew Mr. Wideman robbed the two of them and forced him to strip naked; and (7) Mr. Shaw directly confirmed the armed robbery did, in fact, occur.

This information is reasonably trustworthy and would cause a prudent person to believe Defendant committed the offense of armed robbery. Indeed, the two victims accused Defendant of the armed robbery in conversations with at least four people who were close to them, and the key facts were consistent in each recounting of the robbery. Mr. Wideman was sufficiently outraged that he committed a drive-by shooting at the house of Defendant's mother just one day later. Even Defendant's mother expressed her belief the drive-by shooting was somehow connected to her son's relationship with Mr. Wideman and their prior drug activity.

While Defendant is correct that much of the supporting information is hearsay, officers may consider hearsay when determining probable cause. Zargari v. United States, 658 F. App'x 501, 507 (11th Cir. 2016) (*per curiam*) (recognizing hearsay may support existence of probable cause); Johnson v. City of Warner Robins Ga., No. 5:15-CV-419 (CAR), 2018 WL 1095563, at *20, n.10 (M.D. Ga. Feb. 28, 2018) ("Police officers may base assessments of probable cause on hearsay and may seek arrest warrants on the basis of hearsay."); Thomas v. Tucker, No. 5:11CV332/MMP/EMT, 2012 WL 4742804, at *8 (N.D.

Fla. Aug. 10, 2012), *adopted by*, Thomas v. Tucker, No. 5:11-CV-00332-MP-EMT, 2012 WL 4760870 (N.D. Fla. Oct. 3, 2012) ("To the extent [defendant] claims that his arrest could not be properly based upon statements of other persons, his claim is without merit."); United States v. Acuna, No. 8:06-CR-50-T-30MSS, 2006 WL 1280994, at *4 (M.D. Fla. May 10, 2006) ("[P]robable cause exists as long as the probable "veracity" and "basis of knowledge" of persons supplying hearsay information, plus the results of independent police investigation, make it reasonably likely that the information provided is correct."); see also Favre v. Henderson, 464 F.2d 359, 367 n.16 (5th Cir. 1972) ("Hearsay may, and frequently does, establish probable cause.").

Defendant argues the arrest was improper because Investigator Syria explained at the convenience store she was arresting Defendant so that he could be transported for questioning, and later at the jail she pronounced the charges as firearm and drug possession and "probably gonna have some armed robbery charges coming as well." (Def. Interview, doc. no. 35-1, Ex. 5, 56:55-56:58.)  Defendant also cites the fact he was first charged with cocaine and firearm possession and only later with armed robbery.  The sole focus of the inquiry, however, is the objective determination of probable cause, and neither the officer's intentions nor pronouncements concerning the reason for an arrest is relevant.  See, e.g., Devenpeck, 543 U.S. at 153 (explaining arresting officer's state of mind is irrelevant to probable cause, and subjective reasons for making arrest need not be criminal offense as to which known facts provide probable cause); Whren v. United States, 517 U.S. 806, 806 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); Scott v. United States, 436 U.S. 128, 138 (1978) ("[T]he fact that the officer does

7

not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."); Lee, 284 F.3d at 1195–96 (explaining validity of arrest does not turn on officer's subjective reliance on offense for which no probable cause exists or verbal announcement of wrong offense); United States v. Stinson, No. 1:05-CR-426-TWT/CCH, 2006 WL 739525, at *6 (N.D. Ga. Feb. 22, 2006), *adopted by*, United States v. Stinson, No. 1:05-CR-426-TWT, 2006 WL 783349 (N.D. Ga. Mar. 20, 2006) (explaining irrelevance of police officer's belief he did not have probable cause at time of arrest).

Nor is it of any importance that the federal indictment charges Defendant with firearm and drug possession rather than the armed robbery charge that prompted his arrest. United States v. Jean, 636 F. App'x 767, 769 (11th Cir. 2016) (*per curiam*) (explaining "fact that [defendant] was later charged with being a felon in possession of a firearm, a different offense, does not negate the probable cause to arrest him for aggravated stalking.").

Citing no legal authority, Defendant argues his arrest was not supported by probable cause because Investigator Syria did not know where the armed robbery occurred on the day of Defendant's arrest and therefore would not have been able to establish venue to obtain a warrant under the procedures followed in Richmond County courts. The probable cause inquiry focuses on whether the facts and circumstances "would cause a prudent person to believe . . . that the suspect has committed . . . an offense." Lee, 284 F.3d at 1195. Robbing someone at gunpoint is a crime in every state, and as explained above, Investigator Syria had probable cause to believe Defendant committed this offense. Courts find probable cause in

the absence of important facts, such as identity of the victim or the exact crime committed, "so long as [the officers] had probable cause to believe '*an* offense' had been committed." United States v. Edwards, 632 F.3d 633, 640 (10th Cir. 2001) (quoting United States v. Maher, 919 F.2d 1482, 1485 (10th Cir. 1990)) (finding probable cause for arrest where officer believed offense committed upon noticing defendant with bag of money covered in red dye, but no other knowledge pertaining to a criminal act occurring, such as identity of the victim); see also United States v. Henderson, 464 F.2d 260, 263 (2d Cir. 1972) (finding probable cause to arrest for an offense committed where officers heard yelling and witnessed men running away with bags, but knew no other details as to the type of offense or exact location of its occurrence). That Investigator Syria did not know the exact location of the armed robbery fails to undermine the totality of facts leading her to believe Defendant committed a criminal offense.

Because probable cause supports Defendant's arrest for armed robbery, the search incident to his arrest did not violate the Fourth Amendment. "Since the custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment, a search incident to the arrest requires no additional justification." United States v. Goddard, 312 F.3d 1360, 1364 (11th Cir. 2002) (citing United States v. Robinson, 414 U.S. 218, 234 (1973)); see also Gustafson v. Fla., 414 U.S. 260, 266 (1973) ("[I]t is the fact of custodial arrest which gives rise to the authority to search . . ."). Accordingly, there is no basis for suppressing the firearm and cocaine discovered during Defendant's arrest.

### III.    CONCLUSION

For the reasons explained above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to suppress be **DENIED**.  (Doc. no. 25.)

SO REPORTED and RECOMMENDED this 7th day of May, 2021, at Augusta, Georgia.

*[signature]*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA